IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 33312

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, May 2008 Term |
| | ) | |
| v. | ) | 2008 Opinion No. 89 |
| | ) | |
| SARAH MARIE JOHNSON, | ) | Filed: June 26, 2008 |
| | ) | |
| Defendant-Appellant. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Blaine County. Hon. R. Barry Wood, District Judge.

District court conviction of first-degree murder, <u>affirmed.</u>

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant. Jason Curtis Pintler, Deputy State Appellate Public Defender argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Kenneth K. Jorgensen, Deputy Attorney General argued.

_____

BURDICK, Justice

Appellant Sarah Marie Johnson was convicted of two counts of first-degree murder. Johnson appeals her conviction. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 2, 2003, Alan and Diane Johnson (the Johnsons) were shot and died in their home. Subsequently, the Johnsons' sixteen year old daughter, Sarah Johnson (Johnson), was charged with two counts of first-degree murder. A jury found Johnson guilty of first-degree murder of both Alan and Diane Johnson. The district court sentenced Johnson to concurrent life sentences, plus fifteen years under I.C. § 19-2520 for a firearm enhancement.

## II. ANALYSIS

Johnson raises four issues on appeal. Johnson argues that because aiding and abetting was not charged in the charging document, the district court's instruction to the jury on aiding

1

and abetting constructively amended the charging document and resulted in a fatal variance. Johnson also argues she was deprived of her constitutional right to a unanimous jury verdict because the district court did not instruct the jury it must unanimously agree on whether Johnson actually killed the Johnsons or whether she aided and abetted in the killing of the Johnsons. Finally, Johnson argues her constitutional rights were violated when the district court failed to remove a certain juror from the jury pool or obtain an unequivocal commitment that the juror would follow all of the court's instructions. We address each issue in turn.

**A. Constructive Amendment and Variance**

Johnson asserts that the charging document did not support a jury instruction on aiding and abetting, and that consequently, the jury instruction constituted an impermissible variance or a constructive amendment.[1] Whether there is a variance or constructive amendment is a question of law over which this Court exercises free review. *See State v. Colwell*, 124 Idaho 560, 565, 861 P.2d 1225, 1230 (Ct. App. 1993).

A variance between the charging document and the verdict is fatal when "the record suggests the possibility that the defendant was misled or embarrassed in the preparation or presentation of his defense." *State v. Windsor*, 110 Idaho 410, 418, 716 P.2d 1182, 1190 (1985) (citing *Berger v. United States*, 295 U.S. 78, 82-84 (1935)). Johnson argues there is a variance because the facts the jury would have to find to convict Johnson of aiding and abetting differ from the facts alleged in the indictment. Johnson further argues this variance was fatal because it prejudiced her in the preparation and presentation of her defense.

A constructive amendment occurs when the charging terms of the charging document have been altered literally or in effect. *United States v. Dipentino*, 242 F.3d 1090, 1094 (9th Cir. 2001). The constructive amendment doctrine springs from the Fifth Amendment right to indictment by a grand jury. *See Stirone v. United States*, 361 U.S. 212, 215-16 (1960). The Fifth Amendment right to an indictment by a grand jury is not a due process right that applies to the states through the Fourteenth Amendment. *Branzburg v. Hayes*, 408 U.S. 665, 688 n.25 (1972). Nonetheless, the Idaho Constitution contains a provision with similar wording to the Fifth Amendment, on which the constructive amendment prohibition is based.[2] *See* Idaho Const. art I,

---

[1] On appeal, Johnson does not argue there was insufficient evidence to support the giving of the aiding and abetting instruction.

[2] Article I, section 8 of the Idaho Constitution provides:

§ 8. The Idaho Court of Appeals has appropriately applied the constructive amendment analysis to this Idaho constitutional provision. *See Colwell*, 124 Idaho at 566, 861 P.2d at 1231.

Johnson argues that in Idaho the charging document must contain facts showing the defendant aided and abetted, and that the failure to charge aiding and abetting in the indictment was a violation of due process.

1. Idaho Code § 19-1430 and I.C.R. 7(b) are not in conflict.

Johnson asserts there was a constructive amendment because the jury was asked to determine whether the State proved an element not charged in the indictment. Johnson argues that aiding and abetting contains a separate *mens rea* element—a community of purpose in the unlawful undertaking—and a separate *actus reus* element—proof that the defendant participated in or assisted, encouraged, solicited, or counseled the crime. However, this argument overlooks Idaho's statutory abolition of the distinction between accessories and principals.

Idaho Code § 19-1430 provides:

> **Distinction between accessories and principals abolished.** — The distinction between an accessory before the fact and a principal and between principals in the first and second degree, in cases of felony, is abrogated; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, shall hereafter be prosecuted, tried, and punished as principals, and no other facts need be alleged in any indictment against such an accessory than are required in an indictment against his principal.

Thus, Idaho, consistent with many other jurisdictions, has abolished the distinction between principals and aiders and abettors, and instead treats aiding and abetting as a theory under which first-degree murder can be proved and not as a separate offense or a crime of a different nature. *See State v. Ayres*, 70 Idaho 18, 25, 211 P.2d 142, 145 (1949) (holding the

---

> **Prosecution only by indictment or information.**—No person shall be held to answer for any felony or criminal offense of any grade, unless on presentment or indictment of a grand jury or on information of the public prosecutor, after a commitment by a magistrate, except in cases of impeachment, in cases cognizable by probate courts or by justices of the peace, and in cases arising in the militia when in actual service in time of war or public danger; provided, that a grand jury may be summoned upon the order of the district court in the manner provided by law, and provided further, that after a charge has been ignored by a grand jury, no person shall be held to answer, or for trial therefor, upon information of public prosecutor.

The Fifth Amendment to the U.S. Constitution provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger . . . .

3

information charges one offense (involuntary manslaughter) and that it was sufficient to put defendant on trial upon either the theory that he was a principal or the theory that he was an aider and abettor); *see also*, *e.g.*, *United States v. Ginyard*, 511 F.3d 203, 211 (D.C. Cir. 2008) ("Aiding and abetting is not a separate offense; it is only a theory of liability—one ground upon which the jury may find him liable for the charged offense."); *United States v. Smith*, 198 F.3d 377, 383 (2d Cir. 1999) (holding aiding and abetting is not a discrete criminal offense); *Londono-Gomez v. Immigration & Naturalization Serv.*, 699 F.2d 475, 476 (9th Cir. 1983) ("[T]he aiding and abetting statute does not define a separate offense but rather makes punishable as a principal one who aids or abets another in the commission of a substantive offense.").

However, Johnson argues the last clause of I.C. § 19-1430, which states that it is unnecessary to allege facts other than what is required in a charging document against a principal, is procedural, is in conflict with I.C.R. 7, and thus, is of no effect. Idaho Criminal Rule 7(b) provides that "[t]he indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."

When a statute and rule "can be reasonably interpreted so that there is no conflict between them, they should be so interpreted rather than interpreted in a way that results in a conflict." *See State v. Currington*, 108 Idaho 539, 543, 700 P.2d 942, 946 (1985) (Bakes, J., dissenting).

Here, the statute and the rule, I.C. § 19-1430 and I.C.R. 7, can be reasonably interpreted so that there is no conflict between them. Idaho Criminal Rule 7(b) requires the charging document be "a plain, concise and definite written statement of the essential facts constituting the offense charged." Idaho Code § 19-1430 then provides that in the case of aiding and abetting, the "essential facts" are only those facts that are required in charging the principal. Thus, the rule and the statute can be reasonably interpreted so that there is no conflict between them.

Furthermore, even if a conflict did exist between I.C.R. 7 and I.C. § 19-1430, the statute would prevail. When there is a conflict between a statute and a criminal rule, this Court must determine whether the conflict is one of procedure or one of substance; if the conflict is procedural, the criminal rule will prevail. *State v. Beam*, 121 Idaho 862, 863, 828 P.2d 891, 892 (1992).

4

> Although a clear line of demarcation cannot always be delineated between what is substantive and what is procedural, the following general guidelines provide a useful framework for analysis. Substantive law prescribes norms for societal conduct and punishments for violations thereof. It thus creates, defines, and regulates primary rights. In contrast, practice and procedure pertain to the essentially mechanical operations of the courts by which substantive law, rights, and remedies are effectuated.

*Id.* at 863-64, 828 P.2d at 892-93 (emphasis removed) (quoting *Currington*, 108 Idaho at 541, 700 P.2d at 944 (quoting *State v. Smith*, 527 P.2d 674, 676-77 (Wash. 1974))). "[L]egislation is a constitutional exercise of the Legislature's power to enact substantive law [and] that legislation is to be given due deference and respect." *In re SRBA Case No. 39576*, 128 Idaho 246, 255, 912 P.2d 614, 623 (1995).

Johnson argues that although the first part of I.C. § 19-1430 is substantive, the last clause stating "no other facts need be alleged in any indictment against such an accessory than are required in an indictment against his principal," is procedural. However, the last clause pertains more than to the essentially mechanical operations of the courts; it is defining and regulating the mechanism for giving the defendant notice when that defendant committed a felony as an accessory. The statute abrogates the distinction between principals and accessories and mandates the defendant "be prosecuted, tried, and punished as [a] principal[] . . . ." I.C. § 19-1430. A conclusion that the entire statute is substantive is further supported by I.C. § 18-204, which defines principals as: "[a]ll persons concerned in the commission of a crime . . . whether they directly commit the act constituting the offense or aid and abet in its commission . . . ." Together, I.C. § 18-204 and I.C. § 19-1430 show a legislative intent to consider defendants as principals whether they directly committed the crime or aided and abetted in the commission of the crime. The Legislature's definition of principal and abolishment of the distinction between principal and accessories does not pertain to mechanical operations of the courts; the Legislature is creating, defining, and regulating primary rights. Thus, I.C. § 19-1430 is substantive and does not overlap with this Court's power to create procedural rules. Therefore, even if I.C. § 19-1430 and I.C.R. 7(b) were in conflict, the statute would prevail.

In conclusion, we hold that there is no conflict between I.C. § 19-1430 and I.C.R. 7(b), that I.C. § 19-1430 is substantive, and that in Idaho, it is unnecessary to allege any facts in the charging document other than what is required in a charging document against a principal.

　　2. Idaho Code § 19-1430 does not violate due process.

5

Johnson also asserts her due process rights were violated by the lack of reference to aiding and abetting in the charging document.

First, relying on *Gautt v. Lewis*, 489 F.3d 993 (9th Cir. 2007), Johnson argues the notice required by the Fourteenth Amendment must come from the charging document itself. *Gautt* recognizes the Sixth Amendment's and Fourteenth Amendment's right to be informed of the nature and cause of the charges made in order to adequately prepare a defense. *Id*. at 1002-03. The Ninth Circuit expressed doubt that sources outside the charging document could provide the necessary notice. However, *Gautt* does not actually hold sources outside the charging document cannot ever provide the necessary notice. *Id*. at 1010 ("[F]or purposes of our analysis today, we will assume-without deciding-that such sources can be parsed for evidence of notice to the defendant . . . .").

Moreover, in *Gautt*, the Ninth Circuit was looking at notice of the actual underlying charge and not a theory of liabilty; the Ninth Circuit observed that a court can look to sources outside the charging document to determine whether a defendant had adequate notice of a particular theory of the case. *Id*. at 1009 (citing *Murtishaw v. Woodford*, 255 F.3d 926, 953-54 (9th Cir. 2001), in which the Ninth Circuit held that a defendant charged with first-degree murder was provided constitutionally sufficient notice to support a felony murder jury instruction). Here, aiding and abetting was not the actual underlying charge, it was a theory of liability.[3] *See Ayres*, 70 Idaho at 25, 211 P.2d at 145.

Second, Johnson argues the facts constituting the crime of aiding and abetting are elements, and thus, must be charged in the charging document in order to meet due process requirements. Johnson asserts the charging document must contain the elements of the offense and that a defendant must be put on notice of all of the elements of the crime essential to the punishment sought to be inflicted. For support Johnson cites to *Apprendi v. New Jersey*, 530 U.S. 466, 510-18 (2000) (Thomas, J., concurring), and *Jones v. United States*, 526 U.S. 227, 232 (1999), where the Court stated: "Much turns on the determination that a fact is an element of an

---

[3] Therefore, Johnson's reliance on *Cole v. Arkansas*, 333 U.S. 196 (1948) is misplaced. In *Cole*, the Court held the Fourteenth Amendment was violated when the defendants were charged with violating a certain subsection of a state act but had their conviction upheld based on a different subsection of the state act. *Id*. at 198-99. However, there the Court held the two subsections created separate offenses. *Id*. at 201 n.4. That is not the case here where the Idaho Legislature has made clear that aiding and abetting is not a separate offense. *See* I.C. § 19-1430.

6

offense rather than a sentencing consideration, given that elements must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt."

The Tenth Circuit considered and rejected the same argument Johnson makes here. *See United States v. Alexander*, 447 F.3d 1290, 1298-99 (10th Cir. 2006), *cert. denied* 127 S. Ct. 315 (2006). In *Alexander* the Tenth Circuit considered *Jones* and *Apprendi* and held that "a charge of the predicate crime puts defendant on notice that the jury may be instructed on aiding and abetting, thus satisfying any due process concerns." *Id*. at 1299; *see also United States v. Creech*, 408 F.3d 264, 273 (5th Cir. 2005) (holding *Apprendi* does not upset the long-standing practice of giving aiding and abetting jury instructions even when that theory is not charged in the indictment; thus, there is no Fifth Amendment violation). Johnson asserts *Alexander* is unpersuasive because it distinguishes *Jones* and *Apprendi* on the basis that those cases addressed what is required to increase a punishment. However, *Alexander's* holding did not depend upon that distinction; it held that due process was satisfied because the defendant had notice of the predicate crime and because aiding and abetting is not a separate offense but is a variant of the underlying offense. 447 F.3d at 1299.

In Idaho there is no distinction between principals and aiders and abettors, and it is unnecessary the charging document allege any facts other than what is necessary to convict a principal. I.C. § 19-1430. Johnson contends that in light of Fourteenth Amendment jurisprudence, *Ayres* and its progeny should be overruled because *Ayres*, which bases its ruling on I.C. § 19-1430, "in essence, holds that the Idaho Legislature can legislate away the rights of individuals protected by the Fourteenth Amendment."

Many jurisdictions have held that it is unnecessary to charge aiding and abetting in the charging document and that there is no due process violation when a court gives an aiding and abetting jury instruction even when aiding and abetting is not charged in the charging document. *See, e.g.*, *United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005) ("We have also held a number of times in different contexts that aiding and abetting is embedded in every federal indictment for a substantive crime."); *United States v. Dodd*, 43 F.3d 759, 762 n.5 (1st Cir. 1995) (stating it is not necessary to plead an aiding and abetting charge because that charge is implicit in all indictments for substantive offenses); *United States v. Clark*, 980 F.2d 1143, 1146 (8th Cir. 1992) ("It is well established that a defendant may be convicted of aiding and abetting even though he was not charged in that capacity. Aiding and abetting is an alternative charge in every

7

count, whether implicit or explicit.") (citation omitted); *United States v. Iglesias*, 915 F.2d 1524, 1528 (11th Cir. 1990) ("One who has been indicted as a principal may be convicted on evidence showing only that he aided and abetted the offense."); *Quigg v. Crist*, 616 F.2d 1107, 1111 (9th Cir. 1980) ("[T]he giving of an aiding and abetting instruction does not violate due process where the state has abolished the distinction between principals and accessories, and where there is evidence before the jury to support the instruction."); *United States v. Beardslee*, 609 F.2d 914, 919 (8th Cir. 1979) (rejecting the argument that defendant's due process rights were violated by an aiding and abetting instruction when the indictment did not explicitly charge him with aiding and abetting); *Glass v. United States*, 328 F.2d 754, 756 (7th Cir. 1964) (holding there was no error in giving an instruction on aiding and abetting when defendant was not charged with aiding and abetting because "[a]iders and abettors . . . are chargeable directly as principals."); *People v. Garrison*, 765 P.2d 419, 433 n.12 (Cal. 1989) ("[I]n California the definition of a principal has historically included those who aid and abet . . . and notice as a principal is sufficient to support a conviction as an aider or abettor."); *Hoskins v. State*, 441 N.E.2d 419, 425 (Ind. 1982) ("One can be charged as a principal and convicted on proof that he aided or abetted another in committing the crime."); *State v. Satern*, 516 N.W.2d 839, 843 (Iowa 1994) (holding it was not a surprise or unfair to the defendant for the state to pursue a theory of aiding and abetting at trial when the charging document did not refer to aiding and abetting); *State v. Pennington*, 869 P.2d 624, 629 (Kan. 1994) (holding defendant's due process rights were not violated by a jury instruction on aiding and abetting; it is unnecessary for the State to charge aiding and abetting in the charging document in order to pursue that theory at trial); *People v. Rivera*, 646 N.E.2d 1098, 1099 (N.Y. 1995) ("Traditionally, it has been permissible to charge and admit evidence convicting a defendant as an accessory where an indictment charges only conduct as a principal"); *State v. Johnson*, 272 N.W.2d 304, 305 (S.D. 1978) ("It is settled law that a conviction may be supported by proof that the defendant was an aider and abettor even though the charging instrument charges him as a principal.").

Therefore, because Idaho has abolished the distinction between principals and aiders and abettors, and because it is well-established in Idaho that it is unnecessary to charge the defendant with aiding and abetting, we hold there was no variance, constructive amendment, or due process violation. Moreover, even if there were a variance, Johnson was not prejudiced in the preparation of her defense. First, the State did not introduce evidence of a possible third party

8

shooter; rather, it was Johnson who argued that she could not have been the actual shooter. Second, the State's proposed jury instructions submitted before trial included a jury instruction on aiding and abetting. Thus, Johnson was not misled or embarrassed in the preparation of her defense.

## B. Unanimity Instruction

Johnson contends the district court erred in failing to give an instruction requiring the basis for the jury's verdict (aider and abettor or principal) be a unanimous decision.[4] Johnson acknowledges she did not request this instruction below but contends the issue can be raised on appeal because the absence of the instruction was fundamental error.

Though I.C.R. 30(b) requires objections to jury instructions be made below, this Court reviews fundamental errors in jury instructions even in the absence of an objection below. *State v. Anderson*, 144 Idaho 743, __, 170 P.3d 886, 892 (2007). To determine whether there was fundamental error, the Court must first determine whether there was any error. *Id*. at __, 170 P.3d at 891. In this case, as there is no error, there can be no fundamental error.

"When reviewing jury instructions, this Court must determine whether 'the instructions, as a whole, fairly and adequately present the issues and state the law.'" *State v. Sheahan*, 139 Idaho 267, 281, 77 P.3d 956, 970 (2003) (quoting *Silver Creek Computers, Inc. v. Petra, Inc.*, 136 Idaho 879, 882, 42 P.3d 672, 675 (2002)). An erroneous instruction is reversible error only when "the instructions, taken as a whole, misled the jury or prejudiced a party." *Id*.

In all felony cases, the jury's verdict must be a unanimous verdict. Idaho Const. art I, § 8; *State v. Scheminisky*, 31 Idaho 504, 508, 174 P. 611, 612 (1918), *overruled on other grounds by State v. Johnson*, 86 Idaho 51, 62, 383 P.2d 326, 333 (1963).

Johnson relies on a line of cases from the Idaho Court of Appeals which hold that "[a] specific unanimity instruction is required . . . when it appears . . . that a conviction may occur as the result of different jurors concluding that the defendant committed different acts." *State v. Gain*, 140 Idaho 170, 172, 90 P.3d 920, 922 (Ct. App. 2004); *see also State v. Montoya*, 140 Idaho 160, 167-68, 90 P.3d 910, 917-18 (Ct. App. 2004); *Miller v. State*, 135 Idaho 261, 267-68, 16 P.3d 937, 943-44 (Ct. App. 2000). However, these cases do not support Johnson's argument. In those cases the defendants were charged with various sex crimes. In each case there was

---

[4] The district court did instruct the jury that its verdict must be unanimous.

evidence of more than one criminal act on each count. Thus, the court required that when "several distinct criminal acts support one count, jury unanimity must be protected by the state's election of the act upon which it will rely for conviction *or* by a clarifying instruction requiring the jurors to unanimously agree that the same underlying criminal act has been proven beyond a reasonable doubt." *Gain*, 140 Idaho at 173, 90 P.3d at 923 (emphasis in original). This is not a case where there was "evidence of more criminal acts than have been charged." *See Montoya*, 140 Idaho at 167, 90 P.3d at 917; *see also Miller*, 135 Idaho at 268, 16 P.3d at 944. Here, only one criminal act was charged—first-degree murder—and there was no evidence presented of additional criminal acts.

*Schad v. Arizona*, 501 U.S. 624 (1991), a United States Supreme Court plurality opinion as to the unanimity issue, supports a conclusion that a specific unanimity instruction was not necessary. Schad challenged his first-degree murder conviction because the jury was not instructed to unanimously agree on the alternative theories of premeditated and felony murder.[5] *Id.* at 630. The plurality recognized that jurors need not reach agreement on the preliminary factual issues underlying the verdict. *Id.* at 632. To determine whether the absence of the specific unanimity instruction violated the defendant's due process, the plurality looked at whether there was "an immaterial difference as to mere means" or whether there was "a material difference requiring separate theories of crime to be treated as separate offenses subject to separate jury findings."[6] *Id.* at 633. The plurality noted:

> [W]e are not free to substitute our own interpretations of state statutes for those of a State's courts. If a State's courts have determined that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime, we simply are not at liberty to ignore that determination and conclude that the alternatives are, in fact, independent elements under state law.

*Id.* at 636. Here, the Idaho legislature has abolished all distinction between principals and aiders and abettors, I.C. § 19-1430, and this Court treats aiding and abetting as a theory and not as a

---

[5] The plurality noted this right can be analyzed under the Sixth Amendment right to a unanimous verdict or under the Fourteenth Amendment right to due process. *Id.* at 635 n.5. The plurality concluded "the right is more accurately characterized as a due process right than as one under the Sixth Amendment." *Id.*

[6] In a majority opinion, the U.S. Supreme Court later cited *Schad* with approval to support the proposition that "a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Richardson v. United States*, 526 U.S. 813, 817 (1999).

separate offense with distinct elements, *see Ayres*, 70 Idaho at 25, 211 P.2d at 145. Thus, there is no basis for a specific unanimity instruction.

Likewise, several other jurisdictions have held that it is unnecessary to provide a specific unanimity instruction when a defendant can be convicted of an offense based on actions as a principal or as an aider and abettor.[7] *Garcia*, 400 F.3d at 819-20; *United States v. Horton*, 921 F.2d 540, 545-46 (4th Cir. 1990); *United States v. Eagle Elk*, 820 F.2d 959, 961 (8th Cir. 1987) ("Even if the jury was divided on whether [the defendant] committed the principal crime or aided or abetted in its commission, there can be no question that the illegal act was murder."); *People v. Maury*, 68 P.3d 1, 59-60 (Cal. 2003); *State v. Martinez*, 900 A.2d 485, 494-95 (Conn. 2006); *Simms v. United States*, 634 A.2d 442, 445-46 (D.C. 1993); *State v. Allen*, 453 S.E.2d 150, 159-60 (N.C. 1995), *overruled on other grounds by State v. Gaines*, 483 S.E.2d 396 (N.C. 1997); *Holland v. State*, 280 N.W.2d 288, 292-93 (Wis. 1979).

Therefore, we conclude it is unnecessary to instruct the jury that it must be unanimous as to the theoretical basis for committing the offense (aider and abettor or principal) because aiding and abetting is not a separate offense from the substantive crime. Consequently, the district court's failure to instruct the jury to the contrary was not error.

## C. Juror 85

Johnson argues that the district court's failure to remove Juror 85 from the jury pool or its failure to obtain an unequivocal assurance from Juror 85 that he would follow all of the district court's instructions was error.

During voir dire, Juror 85 expressed a concern that "if evidence was presented by a specialist, and then for some reason [the court] would tell [the jury] to completely disregard that, and [he] felt that it was good evidence, then [he] [doesn't] know if [he] could completely disregard it."

The State argues Johnson has waived her right to raise this issue on appeal because she did not make a challenge below. Johnson responds that the information regarding Juror 85 did not come forth until after she had already passed the panel for cause and that, in any case, this Court can consider the issue because it constitutes fundamental error.

---

[7] Johnson argues cases from other jurisdictions are not persuasive because they do not analyze the right to a unanimous jury verdict provided by the Idaho Constitution. However, these cases reiterate the applicable principle

This Court has held that the failure to challenge a juror for cause "indicates a satisfaction with the jury as finally constituted." *State v. Bitz*, 93 Idaho 239, 243, 460 P.2d 374, 378 (1969). Furthermore, on appeal a defendant cannot claim dissatisfaction with the jury panel when the defendant "failed to exhaust the means available to her to exclude unacceptable jurors . . . ." *See State v. Mitchell*, 104 Idaho 493, 501, 660 P.2d 1336, 1344 (1983).

Johnson argues she had passed the panel for cause before Juror 85 revealed he might have difficulty disregarding certain evidence. It is true that Johnson passed the panel for cause just prior to Juror 85's statement. Nonetheless, after Johnson passed the panel for cause, the trial court asked the potential jurors whether there was any reason they could not sit as fair and impartial jurors. Juror 85 then voiced his concern, as did several other jurors. The trial court communicated those jurors' concerns with the attorneys and gave them the opportunity to again question the jurors who had voiced concerns. This questioning was to take place outside of the presence of the other jurors. Counsel for both sides stated that they did not wish to further question Juror 85. Counsel then questioned other jurors and after further questioning had the opportunity to object to those jurors remaining on the panel. Thus, both attorneys were given the opportunity to again challenge for cause those jurors who had expressed concern. Nonetheless, Johnson chose not to further question or challenge Juror 85 after he stated he was unsure whether he could disregard certain evidence.

However, this Court will consider issues raised for the first time on appeal if there is fundamental error. *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971) ("In case of fundamental error in a criminal case the Supreme Court may consider the same even though no objection had been made at time of trial.")

> Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive. Each case will of necessity, under such a rule, stand on its own merits. Out of the facts in each case will arise the law.

*State v. Lewis*, 126 Idaho 77, 80, 878 P.2d 776, 779 (1994) (quoting *State v. Knowlton*, 123 Idaho 916, 918, 854 P.2d 259, 261 (1993)). To determine whether there was fundamental error,

---

in this case: aiding and abetting is an alternative means of committing the crime charged and whether the defendant committed the acts as a principal or as an aider and abettor, the defendant's liability is the same.

the Court must first determine whether there was any error. *Anderson*, 144 Idaho at __, 170 P.3d at 891.

"The determination of whether a juror can render a fair and impartial verdict rests in the sound discretion of the trial court." *State v. Luke*, 134 Idaho 294, 298, 1 P.3d 795, 799 (2000). The trial court's determination is reviewed for an abuse of discretion. *Id.* To determine whether an abuse of discretion occurred this Court uses a three-part test: (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *Id.*

Johnson first argues an expression of an inability to follow instructions is analogous to a juror expressing a bias towards a party and cites to *State v. Hauser*, 143 Idaho 603, 150 P.3d 296 (Ct. App. 2006). However, *Hauser* is distinct from this case in that Juror 85 did not admit to a bias and here neither attorney nor the court attempted, unsuccessfully, to elicit an unequivocal assurance that the juror would act with impartiality.

In any case, the record does not show the judge acted erroneously in allowing Juror 85 to remain on the panel. The judge asked follow-up questions to Juror 85 and responded with an appropriate explanation addressing Juror 85's concern. Moreover, Johnson has failed to demonstrate she was prejudiced by Juror 85's presence on the panel. Juror 85's concern was that he may have difficulty completely disregarding evidence from a specialist. Johnson has pointed to several instances where the judge instructed the jurors to disregard certain information. However, in most of those instances either the evidence did not come from a specialist or after an appropriate foundation was laid, the evidence was allowed. The only relevant instance of any such instruction Johnson pointed to occurred when the judge instructed the jury to disregard testimony by an expert witness that it was possible during the manufacturing process of making the latex glove, someone's DNA could have gotten inside the gloves. This single instance of the judge instructing the jury to disregard evidence presented by a specialist is insufficient to show Johnson sustained any prejudice by Juror 85's presence on the panel.

We conclude that below there was no error, therefore there was no fundamental error. Hence, we hold Johnson has waived the right to object to Juror 85 remaining on the panel.

## III. CONCLUSION

We hold there was no variance or constructive amendment. We also hold it was not necessary to give a specific unanimity instruction. Finally, we hold Johnson has waived the right to object to Juror 85 remaining on the panel. We affirm the decision of the district court.

Justices J. JONES, W. JONES, HORTON  and TROUT, Pro tem, **CONCUR.**