BURDICK, C.J.,
dissenting as to Part III.A.2 and concurring with Justice HORTON’s dissent on Part III.C. 2.
I agree with the remainder of the majority opinion. My heart goes out to the Stoddart family, friends and the Pocatello community for having to deal with this especially senseless, horrible act, but I feel I must dissent.
Although I have no doubt that Adamcik could have been convicted of first-degree murder under either a felony-murder or aiding-and-abetting theory, had they been presented to the jury, I am unable to concur with the majority’s finding that sufficient evidence was presented to the jury to support Adamcik’s conviction of first degree murder based upon an aiding and abetting theory. Therefore, I respectfully dissent as to Part III.A.2 of the majority’s opinion and with its decision affirming Adamcik’s conviction for first-degree murder.
The jury was presented with no evidence as to the ordering of the stab wounds, nor the timeline over which they took place. Based upon the instructions given, when applied to the evidence presented, I cannot find that the jury reached its verdict, that Adam-cik committed first-degree murder, upon substantial and competent evidence.

1. The State presented insufficient evidence to support a jury conviction that Adam-cik was the direct perpetrator of first-degree murder.

The majority finds that there was sufficient evidence to support a jury finding that: (1) two knives were used to murder Stoddart; (2) both knives inflicted potentially fatal wounds; and (3) one of the knives was used by Adamcik to inflict a potentially fatal stab wound. It is questionable whether sufficient evidence is in the record to support a finding that Adamcik actually stabbed Stoddart, but assuming there was, these findings are insufficient to uphold the verdict entered.
*489 Dr. Skoumal performed the autopsy in this ease and testified that Stoddart’s cause of death was “stab wounds to the trunk”. The majority interprets that finding as necessarily indicating that multiple stab wounds caused Stoddart’s death. However, in light of Dr. Skoumal’s testimony as a whole, I find that Dr. Skoumal was testifying that he could not determine which particular wound(s) caused her death. On cross examination, Dr. Skoumal stated that the “cause of death is stab wound to the trunk” and then “[t]he cause of death was stabbing to the trunk; that’s how it was done.” This interpretation is consistent with Dr. Skoumal’s overall testimony, in which he never identifies specifics about the manner of death, and only identifies certain wounds as “potentially fatal”. Thus, Dr. Skoumal’s testimony does not support a finding that Stoddart necessarily died of more than one stab wound but, rather, that one or more stab wounds caused her death.
There was no evidence presented supporting a conclusion that Adameik inflicted a wound which caused, contributed to, or accelerated Stoddart’s death. If Adameik did not inflict a wound while Stoddart was still alive his conviction would be barred by the doctrine of legal impossibility. See United States v. Hsu, 155 F.3d 189, 199 (3d Cir.1998) (“The common law distinguishes between two types of impossibility — legal and factual— and provides that the former is a defense while the latter is not.... For example, legal impossibility occurs when A shoots a corpse believing it to be alive and intending to commit murder; the attempt does not amount to murder even if completed.”). Where Dr. Skoumal, who performed the autopsy on Stoddart, could not determine which wound was fatal, or how many wounds caused her death, I cannot find that there was substantial evidence supporting a jury finding that Adameik inflicted a stab wound from which Stoddart died. Some wounds are described as “potentially fatal,” each could have been fatal on its own, but Dr. Skoumal could not determine when each wound was inflicted. Furthermore, during cross-examination, the State’s expert Dr. Garrison testified that, in his opinion, some of the wounds were inflicted post-mortem. Dr. Garrison noted that some of the wounds “would be potentially fatal, but it was my opinion the person was no longer viable and so, therefore, it would not have been a fatal wound under the circumstances. If you stab a person in the heart but if they’re already dead, it’s not a fatal wound.”

2. The jury could not have found Adameik guilty of first-degree murder under an aiding-and-abetting theory where the State failed to argue that theory and the jury was not instructed on it.

Additionally, I wish to address the State’s argument that Adamcik’s conviction could be affirmed under an aiding-and-abetting theory of commission even though the jury was not instructed on that theory.
Idaho Code § 18-204 defines “principals” as:
All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense or aid and abet in its commission, or, not being present, have advised and encouraged its commission ... are principals in any crime so committed.
Idaho Code § 18-205 states:
All persons are accessories who, having knowledge that a felony has been committed: (1) Willfully withhold or conceal it from a peace officer, judge, magistrate, grand jury or trial jury; or (2) Harbor and protect a person who committed such felony or who has been charged with or convicted thereof.
Idaho Code § 19-1430 abolishes the distinction between principals and accessories before the fact, providing:
The distinction between an accessory before the fact and a principal and between principals in the first[11] and second[12] degree, in eases of felony, is abrogated; *490 and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, shall hereafter be prosecuted, tried, and punished as principals, and no other facts need be alleged in any indictment against such an accessory than are required in an indictment against his principal.
In State v. Johnson, this Court noted that “Idaho, consistent with many other jurisdictions, has abolished the distinction between principals and aiders and abettors, and instead treats aiding and abetting as a theory under which first-degree murder can be proved and not as a separate offense or a crime of a different nature.” 145 Idaho 970, 973, 188 P.3d 912, 915 (2008).
The State argues that even if the evidence submitted was only sufficient to convict Adameik under aiding-and-abetting (or accomplice) liability, he has faded to show that the district court’s failure to instruct the jury on accomplice liability was fundamentally unfair. The State contends that, as Idaho has abolished the distinction between direct perpetrators and accessories, Adamcik’s right to a fair trial could not have been violated where the evidence at trial was sufficient to support his conviction, regardless of the theory argued. Adameik argues that the State did not contend at trial that Adameik was guilty of first-degree murder by aiding and abetting, nor was the jury instructed on this theory and, therefore, the jury could not have convicted Adameik for aiding and abetting, but only for actually killing Stoddart.
The State argues that Adameik never requested that the district court instruct the jury on aiding and abetting and has failed to show that the district court’s failure to so instruct constituted fundamental error. The State’s argument is misguided. It was the State’s duty to request that the jury be instructed regarding a theory of aiding and abetting if the State wished the jury to consider that theory in its deliberations. The district court’s failure to instruct the jury on aiding and abetting was neither fundamental error nor harmless error; it was no error at all. The State made a tactical decision to try Adameik as a direct perpetrator of first-degree murder and not under an aiding-and-abetting theory. The jury heard no argument on an aiding-and-abetting theory and was not instructed on an aiding-and-abetting theory; therefore, it necessarily must have convicted Adameik of committing first-degree murder as a direct perpetrator.
It is the most fundamental tenet of a fair trial that a defendant may only be convicted for the crimes with which he is charged, this Court may not affirm a conviction on a theory that was never presented to the jury. McCormick v. United States, 500 U.S. 257, 270 n. 8, 111 S.Ct. 1807, 1815 n. 8, 114 L.Ed.2d 307, 324 n. 8 (1991). As the United States Supreme Court stated in McCormick:
This Court has never held that the right to a jury trial is satisfied when an appellate court retries a case on appeal under different instructions and on a different theory than was ever presented to the jury. Appellate courts are not permitted to affirm convictions on any theory they please simply because the facts necessary to support the theory were presented to the jury.
Id. See also De Jonge v. Oregon, 299 U.S. 353, 362, 57 S.Ct. 255, 259, 81 L.Ed. 278, 282 (1937) (“Conviction upon a charge not made would be sheer denial of due process.”) Therefore, we could not affirm Adamcik’s conviction for first-degree murder on a theory of aiding and abetting.
Had the State charged Adameik with attempted first-degree murder, first-degree murder under an aiding-and-abetting theory, or even felony murder, there is no doubt that substantial and competent evidence was presented that would have supported the jury’s verdict. Recognizing that State v. Johnson, 145 Idaho 970, 974, 188 P.3d 912, 916 (2008), had not been released at the time of Adam-cik’s trial, under the reasoning of that decision the State could have requested aiding- and-abetting instructions at the close of its evidence, even though the Information against Adameik did not allege a theory of aiding and abetting. However, by charging Adameik solely with first-degree murder and failing to offer any direct or circumstantial evidence to support the jury’s verdict that Adameik actually inflicted a fatal stab wound, *491 the State failed to present sufficient evidence to support a finding that each element of first-degree murder as charged had been proven beyond a reasonable doubt. I must respectfully dissent as well as join Justice Horton’s dissent. I agree with the remainder of the majority’s opinion.

. A principal in the first degree is "[t]he perpetrator of a crime.” Black’s Law Dictionary 1312 (9th ed. 2009).

. A principal in the second degree is "[o]ne who helped the perpetrator at the time of the crime.” Black’s Law Dictionary 1312 (9th ed. 2009).